Good morning. May it please the court, first of all, I would like to reserve probably two minutes for rebuttal. On one level, the decision of the district court focused on the videotape of the portion of the incident and came to the conclusion that the videotape was susceptible to only one interpretation and I'll say trumped all the other evidence presented in the case. And in reviewing the videotape, what we have is we have a videotape taken from a patrol car that's behind the car in which the plaintiff is to be placed. There is, I'll say, the cherry tops flashing, it's dark, and in reviewing the video multiple times, I find it difficult that a reasonable trier of fact could only come up with that there's only one interpretation of what that video means. And that's essentially what the district court did. And I think the district court, I'm not going to say ignored, but didn't give sufficient weight to the other evidence presented in the case. The district court noted that the videotape didn't correspond with the testimony or the deposition testimony that Mr. Sanchez provided. And the timing of what he said happened didn't line up with the timing of what the videotape showed. So, like the point when Officer Gomez ran or the point when Mr. Sanchez ran, what do we do with that? When you put his testimony in a timeline next to the videotape, it doesn't correspond exactly. I think if you look at his deposition testimony, and note, it's his deposition testimony. It's not a situation where, you know, for purposes of the motion for summary testimony. And I think if one not only looks at the particular snippet that is their exhibit 286, which is the portion of the videotape that shows trying to get him, getting him next to the patrol car, and him either being pushed or falling off the curb. And I submit it shows him being pushed. I think if you put everything together, and that would include his testimony, the video that's at 286, which is the one I've been talking about, plus 287, 288, and especially 289. 289 is the other, it's the video camera from the car in which he was placed. And before he's placed in the patrol car, what you can, what you, what you see is, and the cam is facing towards the back window, the back seat. What you see, what you hear are cries of pain, and I'll say him not understanding why he's being treated in the manner he's being treated. And you also see... Where does that go to? Pardon me? Is the summary judgment based on the fact that he wasn't injured? No. Then what does the fact that he exhibited pain tell us? Pardon me? If the issue isn't whether or not he was injured, the fact that he expressed pain doesn't seem to me to make much difference with regard to the summary judgment. That wasn't the basis for the summary judgment. But what I'm saying is that when you consider the timing of the pain, of the timing of his cries for pain, when you consider the videotape and all of the evidence, I think it does, it is susceptible to a reasonable finder of fact that Mr. Sanchez's version is correct. And once again, I don't think that what I interpreted out of the videotape, it's only susceptible of one interpretation. Well, so Mr. Sanchez testifies that Officer Gomez, he says, the sequence of events was he ducked and snapped my hand in one fast motion and ran past me as if he didn't do anything. But when you look at the videotape, as the district court indicated, what it shows is that first Mr. Sanchez falls and then Officer Gomez runs, and according to Officer Gomez, he ran to turn on the dash cam to make sure that would get the prior few minutes or whatever, however long it goes for. So the central incident in the sequence of events that Mr. Sanchez testified aren't reflected in the videotape. That seems to be the key to the district court's determination, that the videotape contradicts Mr. Sanchez's theory about how he got injured. Once again, I mean, I don't think it does, because what the videotape, and I've reviewed it probably ad nauseum, is that it appears to reflect Mr. Sanchez moving forward off of the curb towards the car and the officers moving with him. And this is all in the context of a very bright light in the screen, so that basically what you're essentially seeing are shadows. So your view is that the video is not clear enough so that it can contradict, sufficiently contradict, Mr. Sanchez's testimony so that there wouldn't be a genuine issue of material fact for the jury. Is that your central argument on this? Well, that's my central argument, that there's a question of fact. I mean, I have a fundamental issue with whether or not Scott v. Harris stands for the proposition that the district court said it did. And that's because I think there's a lot more going on in Scott v. Harris than — Scott v. Harris is not a videotape case. It's an evidence case. And I think to use Scott v. Harris for the purpose that the district court is using it doesn't take into account that here we're not talking about qualified immunity. But Scott v. Harris, that's exactly what they're talking about. They're both summary judgment cases. The question is, at what point can a judge say a jury could not reasonably conclude X because X is too inconsistent with the evidence? In both cases, the purported evidence that made the difference was a videotape. In Scott, it was the car chase. Here it's the videotape of the episode. But at core, they're both summary judgment cases. I understand that. I mean, but taking the context of Scott, you had a district court say one thing. You had the Circuit Court of Appeal agree with the district court. And then you had the Supreme Court decide by an eight-to-one majority that the videotape said something else. I'm not sure they said the videotapes said something else. They said that's enough for summary judgment, that even though a plaintiff has testified or has offered declarations in support of a given position, that's not enough to create a genuine issue of material fact if, in fact, you had a videotape that says what actually happened. I understand what you're saying with regard to not making Scott too close to this case. But at core, it seems to me it's a summary judgment case. And that's what this is. Yes, it is. But in view of some of the language in Scott and the way that Scott's been interpreted in this particular court, I think qualified immunity has to sort of stand apart. But I think what I'm getting, the bottom line of my argument, since my yellow light is on, is that I think that if you look at all the evidence in this case and put that together with the videotape, I don't think the videotape trumps all the other evidence, quite simply. Okay. Thank you. Thank you. We'll hear from counsel for the city. Good morning. How do you like it if a judge asks you a question before you start to speak? Okay. So just explain to me why you think, I looked at the video over and over again also. My eyes, I guess, are not as good as they used to be. But, you know, it seemed a little confusing to me. Tell me what exactly I saw in the video that was a significant variance to what the plaintiff's testimony was so that we can grant summary judgment. Well, the plaintiff contended that the officer pushed him down, broke his hand, and then, whether there was a, as the other justice pointed out. Just to stop right there, because I looked at it and I saw him stumble off the curb and I couldn't see clearly what was going on behind his back, whether or not the officers were twisting it or not, whether they shoved him or not. That wasn't so clear to me. But what else do you have? That the sequence of events repeatedly testified to by the plaintiff is in direct contradiction of the sequence of events in the video. Well, tell me specifically what you rely on. The officer, Gomez, runs to the car after the plaintiff stumbles off of the curb because he wants to capture the video to show that there was no force used. The plaintiff shows Officer Gomez running to the car at some point prior to his fall. There's a switch in the timing of when Officer Gomez runs to the car. As the officers are escorting the plaintiff to the car, they have him handcuffed and, as admitted by the plaintiff, there's significant size discrepancies between the officers and the plaintiff. So they have a hold of his hands and they're walking him. He's intoxicated, he's acting erratically, and then he stumbles off of the curb. And if you look at the video, you can see the officers kind of falling after him. There's no movement that they're shoving him. They're sort of falling and stumbling after him. You see, to me, I didn't see that so clearly. Maybe my eyesight is not so good. I mean, I saw officers running away after that. But as far as the actual incident that I guess is the trigger of this case, whether he stumbled off the curb on his own or whether he was pushed by the officers, I just couldn't make it out so clearly. Well, I would then offer that there's subsequent video after the incident, after the plaintiff is picked up from the street. And he's a very large man. He's picked up by two, five officers, and he's 6'2 or 6'4. So they get him off the street and get him in the backseat. He's being overly emotional. But you see the officers standing on the side of the road, and they're talking. And there's no activity. There's no voices other than the plaintiff's overreaction to indicate that any type of force had been used. Everything is very calm. The passenger in the plaintiff's car is speaking very calmly and friendly with the officers. Here's my problem. So Mr. Sanchez testifies they snapped his finger. I can't see from the video, because I'm looking at the front, I can't see what's happening behind his back, as Judge Block said. I can't see if they snapped it or not. Presumably he's making a declaration based on the facts as he knew them, and I don't see anything in the video that blatantly contradicts them, as in Harris. So how is there not a genuine issue of material fact there? As to the snapping of the finger, which is the basis for his claim. Well, that's why we had the plaintiff examined by an enhanced specialist, an orthopedist. Right, but that just creates a genuine issue of material fact as to whether it was broken from twisting or broken from falling or whatever it is. That's just classic summary judgment material that goes to the jury. Well, I agree with you if a counter medical declaration or expert had been retained, if that evidence in the form of an expert opinion had been submitted to the court. But it was not. It was only plaintiff's own testimony. He alleges it. What's wrong with that? He was there. He knows when his finger broke, he felt it. That seems like it creates a genuine issue of material fact. He doesn't need an expert to bolster his credibility for summary judgment, does he? Well, I believe in this case what we have is a series of self-serving statements by the plaintiff that are not supported. Most testimony is self-serving. That doesn't preclude it. Well, and that is why I was citing Scott v. Henrick, because I would ask that the court look at the totality of the circumstances to see if all of the evidence, both objective and circumstantial, is going to support the officer's statements, if their testimony is internally consistent with the officer's version of the events. That, I think, is what trumps the plaintiff's self-serving evidence, because he has nothing else to offer except his own testimony. If the video wasn't in evidence, would you be making the same argument? Yes, I believe so, because we have the discrepancies. And we also have an issue as to, arguably, if there had been use of force, would a minimal use of force been justified in this situation where we have a huge discrepancy between the size of the suspect, the size of the officers. We have an overreactive, intoxicated suspect. The officers are allowed and permitted to use a certain amount of force to control a suspect whose behavior may be erratic. Under Gregory v. Malley, the officers can use a minimal level of force if they suspect that the suspect may become violent or agitated or difficult to control while they are putting him into custody. So I have this clear. You're not willing to concede that if not for the video, we would have issues of fact that could not be decided on the basis of a summary judgment? I cannot concede that at this point. It's difficult to speculate. We have a lot of officers who were present. The summary judgment entered by the district court appeared to rest entirely on the videotape. Is that correct? That's correct. So you could have offered different arguments to the district court, and you could offer alternative arguments to us now, but the summary judgment we're looking at was founded on the videotape. Well, on that one videotape. The district court did have all of the videotapes and declarations before it in the motion for summary judgment. So I would just, again, reiterate that I feel that once you look at the totality of the evidence, and I agree with the appellant's counsel that this is an evidentiary case, that everything that we've presented to the district court and to the court of appeals is consistent with the officer's testimony and versions of how this incident occurred. And I have nothing further. If you have any further questions. Thank you. Apparently not. We thank you for the argument. Thank you. And we have a few seconds left for rebuttal. Your Honors, I believe that if there was no videotape, the court would have denied the motion for summary judgment. Does the videotape, is it once again susceptible of only one interpretation? I believe not. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Ikuta, Block